[Civ. No. 11578. Second Appellate District, Division Two.—November 15, 1937.]

H. H. BELL, Appellant, v. RIO GRANDE OIL COMPANY (a Corporation), Respondent.

Walter H. Hewicker and Leonard E. Thomas for Appellant.

H. L. Dunnigan and Gordon A. Goodwin for Respondent.

CRAIL, P. J.—This appeal is taken from a judgment in favor of the defendant in an action for breach of contract.

Plaintiff became the owner of an oil and gas lease upon a certain 80 acres of land. The legal title to the land was held by R. H. Anderson who, some time prior to the commencement of this action, conveyed said land to R. H. Anderson, Inc., a corporation. In July, 1930, plaintiff, through an agent named Young, offered to sell his leasehold estate to defendant. Negotiations for the sale continued until some

time in August, when defendant refused to deal further with plaintiff or his agent because of the fact that the leasehold estate was encumbered and possibly in default. Thereafter, on August 25, 1930, defendant commenced negotiations with R. H. Anderson, as president of R. H. Anderson, Inc., to lease said 80 acres from the corporation, the owner of the fee title. On September 24, 1930, defendant addressed a letter not to the plaintiff, but to R. H. Anderson, in which it offered to lease the said land. Inasmuch as plaintiff contends this letter constitutes the agreement, for the breach of which this action was brought, we set forth its provisions: ''Regarding your property on Gould Hills, [legal description]. Subject to approval of title by our Legal Department, we agree to lease from you the property on the following terms and conditions: 1. $6,000 in cash and $6,000 to be paid out of 10% of the oil produced and saved. 2. ⅛ royalty. 3. We agree to start operations on the property by way of cleaning out the present wells within 60 days after title is approved. 4. If we fail in making a commercial producer, we will pay $2 per acre, per month, to defer the drilling of a new well for a period not to exceed five years. 5. We agree to pay the actual expenses of a suit to quiet title to a maximum amount of $400. 6. Your lease to us is to be Oil Age form 86, with modification to conform with this letter. Kindly signify your acceptance of this in the space allotted below.'' In accordance with some understanding with plaintiff, the details of which do not appear to have been disclosed either to the court or to the defendant, Anderson forwarded this letter to plaintiff and the latter signified his acceptance or approval by signing his name in the space provided for acceptance. Thereafter, Anderson, by agreement with plaintiff, caused a quiet title action to be commenced in the name of R. H. Anderson, Inc., against plaintiff and others claiming any interest and a decree was duly entered, quieting title against plaintiff and others. The expense of this action in the amount of $400 was paid by defendant.

Shortly thereafter a lease was entered into between R. H. Anderson, Inc., lessor, and defendant as lessee in accordance with the above agreement, with the exception that the provision concerning cleaning operations was changed with the consent of the lessor, i. e., it was provided that the lessee might, at its option, during the first five years, suspend re-

quired drilling or cleaning operations without being in default, provided lessee paid to lessor $2 per acre per month for each acre covered by the lease. The lease further provided that lessee might at any time quitclaim all, or any part of the leased premises and that, if lessee chose to quitclaim all the leasehold, by paying the sum of $10 to lessor as liquidated damages, all rights and obligations of the parties would terminate. Such a surrender clause is a standard provision found in all "Oil Age form 86" leases. At the time of entering into the lease, defendant delivered to R. H. Anderson a check for $6,000, which, pursuant to some undisclosed understanding, was endorsed by Anderson to plaintiff. Contemporaneously, plaintiff's agent, Young, demanded that the check be made payable to plaintiff, but was informed by defendant's representative that the instructions were to deal with Anderson alone, and not with plaintiff. Defendant paid the rental of $2 per acre, per month, so long as it held the property and this rental was accepted by the lessor in lieu of the drilling and well-cleaning provisions of the lease. In November of 1932 defendant quitclaimed and surrendered the leasehold estate to R. H. Anderson, Inc., and the latter accepted such surrender. Plaintiff commenced the present action upon the theory that the surrender of the lease constituted a breach of the agreement (letter) of September 24, 1930, and sought to recover $6,000 damages for defendant's failure to pay that sum out of oil produced.

Briefly, plaintiff's contentions are that, in the transactions leading up to the execution of the lease, Anderson was acting as plaintiff's agent; that even though defendant might surrender the lease, thus terminating its obligations to the lessor, such surrender did not relieve defendant of its obligation toward plaintiff to clean out existing wells within 60 days and to pay $6,000 out of oil produced, as set forth in the agreement of September 24, 1930, under his claim this latter agreement was separate and distinct from the lease.

Plaintiff advances the contention that certain specified findings of the trial court were contrary to the uncontradicted evidence. The gist of these findings, in so far as they bear upon this appeal, is as follows: That defendant did not enter into any agreement with plaintiff respecting the lease in question and the resultant corollary, that R. H. Anderson

did not act as plaintiff's agent in these transactions; and that, in general, none of the provisions contained in the letter of September 24, 1930, constituted obligations of the defendant to the plaintiff. We are of the view that there is substantial evidence in the record to sustain the findings of the trial court.

The evidence concerning any known and disclosed agency relationship between plaintiff and Anderson is nebulous and insubstantial. However, assuming that Anderson was acting as agent for plaintiff, we are of the opinion that the agreement of September 24, 1930, and the lease must be read as one complete agreement and not, as contended by plaintiff, as two separate agreements, in which the obligations of one run solely in favor of plaintiff and the other, solely in favor of R. H. Anderson, Inc. A written agreement may, by reference expressly made thereto, incorporate other written agreements; and in the event such incorporation is made, the original agreement and those referred to must be considered and construed as one. (*Beedy* v. *San Mateo Hotel Co.*, 27 Cal. App. 653 [150 Pac. 810]; *Roberts* v. *Security Trust & Sav. Bank*, 196 Cal. 557 [238 Pac. 673].) The agreement of September 24th expressly states, ''Your lease to us is to be Oil Age form 86, with modification to conform with this letter.'' *Oil Age form 86* is a standard form of printed lease, containing the provision that the lessee might, at his option, surrender the lease, and upon doing so, all rights and obligations of the parties would terminate.

Thus, reading the agreement of September 24th and the lease as one contract, it appears that defendant agreed to pay $6,000 out of 10 per cent of the oil produced and saved, *unless* before producing any oil, defendant should surrender the lease, in which event, there would be no further obligation on the part of the defendant. The obligation to pay the sum of $6,000 is subject to a condition precedent, i. e., it does not accrue until such time as oil may be produced and saved. (Civ. Code, sec. 1436.) Since the obligation depends upon an uncertain event, the possible production of oil, it is conditional (Civ. Code, sec. 1434) and is further subject to being extinguished by the occurrence of a condition subsequent, viz., the surrender of the lease by the defendant. (Civ. Code, sec. 1438.) We conclude as regards this contention

that the obligation never became fixed because the defendant surrendered the premises without having produced any oil.

Judgment affirmed.

McComb, J., concurred. Wood, J., being disqualified, took no part in the decision of the above case.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 14, 1938.