[Civ. No. 12946. First Dist., Div. Two. Feb. 4, 1946.]

VALLEY CONSTRUCTION CO. (a Copartnership) et al., Appellants, v. CITY OF CALISTOGA, Respondent.

James F. Boccardo and Edwin H. Williams for Appellants.

Lowell Palmer, City Attorney, Coombs & Dunlap and Conrad Weil, Jr., for Respondent.

DOOLING, J.—The plaintiffs entered into a contract with the defendant, city of Calistoga, for the construction of a dam and spillway. The contract was based upon unit prices for the various items included in the contract. The contract contained the following provision:

"True copies of the Notice Inviting Sealed Proposals, Instructions to Bidders, Proposal of the Contractor, and Plans and Specifications, together with all modifications incorporated in those documents before their execution, are hereunto annexed by reference thereto incorporated herein and made a part hereof. as though in this document fully set forth."

Paragraph 48 of the specifications so annexed and referred to reads:

"48. MODIFICATION OF PLANS. The location of the dam, spillway, control works, cut-off trenches and appurtenances are shown on the plans as tentative, based on the expectation of finding satisfactory foundation in the positions shown. If excavation discloses the necessity of change to other elevations or locations than shown on the plans to secure satisfactory foundations, and to satisfy the conditions of greatest economy and the requisite safety, the contractor

shall not be entitled to any compensation by reason of such change, other than payment for the actual work done based on the measured quantities at the unit prices named in his contract.''

The spillway as shown in the original plans was on the right abutment of the creek, but after the work on the dam was commenced the State Department of Public Works determined that as so planned the spillway would be unsafe and the plans were changed to require the construction of the spillway on the opposite bank.

After the work was completed and the final payment according to the unit prices had been received in full plaintiffs commenced this action seeking the recovery of an additional amount alleged to be the increase in the cost of the work of constructing the spillway in the new location. The trial court gave judgment for defendant and this appeal followed.

Appellants first claim that paragraph 48 of the specifications was not part of the contract, citing such cases as *Moreing* v. *Weber*, 3 Cal.App. 14, 20 [84 P. 220], and *Nielson* v. *Swanberg*, 99 Cal.App. 270, 279 [278 P. 876], which announce the rule that where a contract refers to another writing for a particular specified purpose such other writing becomes a part of the contract for the specified purpose only. The reference hereinabove quoted makes the plans and specifications ''a part hereof as though in this document fully set forth.'' The reference is general not specific.     The rule is thus stated in 9 American Jurisprudence 11:

''Where the plans and specifications are by express terms made a part of the contract, the terms of the plans and specifications will control with the same force as though incorporated in the very contract itself. Where, however, the plans and specifications are referred to in the contract for a particular specified purpose, such specifications can serve no other purpose than the one specified, and are foreign to the contract for all other purposes.''

Supporting cases for both statements will be found collected in the note in Annotated Cases 1913C at pages 225-226.

The authorities in California are clear that if the reference in the contract to the plans and specifications indicates an intention to incorporate them generally they become a part of the contract for all purposes. (*Woollacott* v. *Meekin*, 151 Cal. 701 [91 P. 612]; *Gray* v. *Cotton*, 166 Cal. 130, 134 [134 P. 1145]; *Bird* v. *American Surety Co.*, 175 Cal. 625, 631

[166 P. 1009]; 6 Cal.Jur. 321; *cf. Roberts* v. *Security T. & S. Bank,* 196 Cal. 557, 563, 566 [238 P. 673]; *Bell* v. *Rio Grande Oil Co.,* 23 Cal.App.2d 436, 440 [73 P.2d 662]; *Beedy* v. *San Mateo Hotel Co.,* 27 Cal.App. 653, 660 [150 P. 810].)

Under the broad language of this contract we are satisfied that the entire plans and specifications, including paragraph 48 above quoted, became an integral part of the contract.

Appellants' main argument is directed to the proposition that even though paragraph 48 is a part of the contract the reservation in a construction contract of the right to make alterations in the plans is limited to changes that do not unreasonably alter the character of the work or unduly increase its cost. (*Wood* v. *Fort Wayne,* 119 U.S. 312 [7 S.Ct. 219, 30 L.Ed. 416]; *Bay City* v. *Frazier,* 77 F.2d 570; *Salt Lake City* v. *Smith,* 104 F. 457 [43 C.C.A. 637].) The rule may be conceded, but it still remains to determine whether under the evidence appellants brought their case so clearly under the rule that we must hold as a matter of law that the trial court erred in denying them a judgment.

Certain items of damage alleged in the complaint were abandoned on the trial. The only items that appellants now seek to recover amount to $6,523.93, claimed to be made up of increased costs of excavation at the changed location of the spillway, and increased cost of pouring cement for the spillway under the changed plans. The depositions of the appellant Mahan and of one Fertig were the only evidence produced by plaintiffs.

Insofar as increased cost of excavation is concerned they testified that the original location of the spillway was in soft dirt and ash which could have been excavated by "cats and carryalls" in a few days, whereas the spillway was actually built in hard rock which required blasting with dynamite, entailing overbreaks which they had to fill with cement without compensation, and greatly increasing the time required for, and the actual cost of, the work of excavation itself. Respondent's engineer, who supervised the work, testified that the original site was overlaid with rock 20 feet deep which would have had to be removed if the spillway had been constructed there, and that most of the excavation work actually done was "excavated with a bulldozer and rooter and with caterpillar power. Very little—practically no blasting was done except under the spillway structure itself, the overflow of the structure itself, where we had to go down and get an

anchorage.'' Respondent's witnesses also testified that at appellants' request the crest of the dam was raised five feet so that it would require less excavation to construct the spillway and for the additional material used in so raising the dam appellants were paid at the unit prices.

Insofar as the increased cost of pouring concrete is concerned appellants' witnesses testified that the original spillway channel was designed with walls on a one to one slope and the concrete could have been placed on such a slope without the necessity of building forms, whereas the spillway as actually constructed required the building of forms. Mahan was asked on cross-examination if concrete could be laid on a one-quarter to one slope without forms and answered, ''No.'' Respondent's witnesses testified that the slope of the walls of the spillway channel shown on the original plans was ''practically vertical, one-quarter to one foot'' and as originally designed would have necessitated the use of forms. The five cross-sections of the spillway channel shown on the plans attached to, and made a part of, the original contract actually scale to show a slope of one-quarter to one, and not one to one as claimed by appellants. Other changes in design were also claimed to have increased the cost of pouring concrete, but both of appellants' witnesses testified to a flat sum increase without any breakdown of their figures, so that it is impossible to tell what percentage of the whole they attributed to these other factors.

The appellant Beaton was present representing the partnership at the meeting of the council at which the final payment on the completed contract was authorized. There was a disputed item of $278.18. There is testimony that before allowing this item Beaton was asked if this final payment that was up for action represented all of the claims that he had against the city of Calistoga, to which he answered, ''Yes.''

The case falls under the familiar rule that the resolution of all conflicts in the evidence is for the trial court, and its judgment if supported by substantial evidence is final. (*Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 503 [106 P.2d 886].) Not only was there a substantial conflict of evidence as to whether the change in the spillway was of such a radical character or so greatly increased the cost as not to fall within paragraph 48 of the specifications, but the court was entitled to consider the testimony, if believed, of the appellant Beaton's admission made under the most

solemn circumstances while he was actually representing the partnership in the collection of the final instalment under the contract. That alone would support the inference that appellants themselves did not believe that the change in the location and design of the spillway fell outside of the power reserved in paragraph 48 of the specifications.

Other matters are suggested by appellants but not seriously argued.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.