[Civ. No. 1265. Fifth Dist. July 8, 1971.]

TRAVELERS INSURANCE COMPANY, Plaintiff and Respondent, v. INDUSTRIAL INDEMNITY COMPANY, Defendant and Appellant.

## COUNSEL

Thelen, Marrin, Johnson & Bridges, Edward J. Ruff and Thomas R. Hogan for Defendant and Appellant.

Stammer, McKnight, Barnum, Bailey & Barnett and Galen McKnight for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—Industrial Indemnity Company (Industrial) appeals from a summary judgment in favor of Travelers Insurance Company (Travelers) which judgment is grounded upon the theory of contribution arising from a risk covered by policies written by both companies for Evans Telephone Company. Industrial issued to Evans a workmen's compensation and employer's liability policy, while Travelers issued to Evans a general liability policy. Both were in effect on December 8, 1949, when Melvin Williams, an employee of Evans, came into contact with a Pacific Gas & Electric Company wire and sustained serious injuries. Industrial paid Williams compensation under the workmen's compensation provisions of its policy, including medical expenses. Williams later sued P. G. & E. for damages resulting from his injuries, and recovered $226,920.09.

In April 1962, P. G. & E. sued Evans on the theory of implied indemnity. Evans tendered defense of the action to its general liability carrier, Travelers, and Travelers provided a defense. On July 2, 1963, Evans and Travelers made demand on Industrial to join with Travelers in defense of the action. Industrial refused, on ground that its policy did not cover actions against Evans, the insured employer, by third parties seeking indemnity for damages paid to an Evans employee.

In March 1967, Travelers and Evans settled with P. G. & E. by payment of $15,000, first securing a stipulation from Industrial that the settlement would not prejudice Travelers' claim for contribution from Industrial. Travelers then filed the instant action against Industrial, seeking to recover a pro rata share of the $15,000 paid to P. G. & E. and of the $17,028.18 attorneys' fees and costs incurred in the suit.

Both Travelers and Industrial moved for a summary judgment on the pleadings. The trial judge denied Industrial's motion, granted Travelers' motion insofar as it sought a pro rata share of contribution from Industrial of the $15,000 paid by Travelers to P. G. & E. by way of settlement, but left for trial the issue of the amount and reasonableness of attorneys' fees and expenses incurred by Travelers. By stipulation, the amounts and reasonableness of attorneys' fees and costs were resolved and the trial court was requested to enter a judgment without further trial. Judgment was thereafter entered in favor of Travelers, against Industrial, in the sum of $22,691 with prejudgment interest. This appeal followed.

The policy issued to Evans by Industrial in 1949 included the following provision: "Three To Defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceed-

ings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent."

Travelers points out that in *Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455], the court held that an insurance carrier having a duty to defend and failing therein must make contribution to another carrier that does defend; that is, where there is "other insurance" covering the same liability the defense by one insurer inures to the benefit of the nondefending carrier. Under the equitable principle of subrogation, the defending carrier is entitled to contribution from the carrier that refused to defend. Travelers contends the above quoted provision of the policy required Industrial to defend Evans against the P. G. & E. suit for indemnity.

The right to recover attorneys' fees and costs, however, is predicated upon the basic question in the case, whether Industrial did, in fact, insure Evans against the kind of damage action brought by P. G. & E. or the kind of liability imposed upon Evans by law for damages on account of personal injuries sustained by its employee. The controlling provision of the policy reads as follows: "One (b) To indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained . . . ."

The trial court interpreted this language to include liability for indemnity claims of third parties against the employer arising out of injuries to the employee.

Industrial argues that the language clearly limits its coverage to liability resulting from claims made direct by the employee himself against the employer, while the P. G. & E. claim against the employer here was under the theory of implied indemnity, made by a third party joint-tortfeasor. Industrial filed no declarations, either by way of answer to Travelers' motion for summary judgment or in support of its own counter-motion for summary judgment, concerning the intent of the parties at the time the agreement was executed. Thus we approach the question of interpretation as a matter of law, taking the language of the policy at face value.

Since the language of the policy does not expressly exclude implied indemnity, the critical question is whether indemnity that is neither expressed nor excluded, but implied by law, is a covered risk. An additional question under the facts peculiar to this case is whether changes in the scope of liability under an insurance policy, resulting from court decisions handed down after a policy is issued, inure to the benefit of the policyholder.

■ This latter question arises because in 1949, when the policy was issued, the courts of California had not recognized the right of a third party tortfeasor whose negligence concurred with that of the employer, to recover from the negligent employer under the theory of implied indemnity. We are told that "indemnity arising as a matter of law has only recently been generally recognized in this state" (Conley and Sayre, *Rights of Indemnity As They Affect Liability Insurance* (1961) 13 Hastings L.J. 214) and that the first case to expressly recognize the right of implied indemnity under these circumstances was *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434 [328 P.2d 785].

Industrial cites *M. H. Treadwell Co.* v. *United States Fidelity & Guar. Co.* (1937) 275 N.Y. 158 [9 N.E.2d 818], a case factually similar to the case at bench, holding that the policy there did not cover the risk of implied indemnity. No other case is cited to us that appears to be in point, and we find none. However, we believe the 1937 New York decision has no bearing on the case at bench in that it does not appear that the New York law of implied indemnity at the time the *Treadwell* case was decided, is apposite to the law under which we must decide this case. In fact, were we to interpret the policy before us according to the law of California in 1949, for reasons expressed above different considerations would influence the result reached.

■ We conclude that where the scope of liability covered by language contained in an insurance policy has been enlarged by judicial pronouncement, the language defining coverage embraces the total liability ascribed to it by the courts, so long as the policy remains in force. At first blush this appears to be a harsh rule, particularly here because of the extremely unusual circumstance that the policy was written in 1949 and liability is being determined some 20 years later. However, a contrary view would bring about an even more discordant result for it would mean that where courts enlarge liability during the effective period of a liability policy, an insured who contracted for complete coverage of a possible risk would be left without coverage because the scope of the risk had been enlarged by decisional law. Many examples come to mind where liability has been enlarged by a novel judicial interpretation of the law or by an expanded application of existing law. A good example is the liability of owners and occupiers of real property, as articulated in *Rowland* v. *Christian,* 69 Cal. 2d 108 [70 Cal.Rptr. 97, 443 P.2d 561].

■ The fact the language, "loss by reason of the liability imposed upon him by law," in 1949 did not envision coverage within the indemnity concept expressed in *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co., supra,*

does not negate the existence of liability at the time the policy was written and as long as it was in effect.

The judgment is affirmed.

Gargano, J., and Brown (G. A.), J., concurred.