[No. C014660. Third Dist. May 31, 1994.]

ALTA CALIFORNIA REGIONAL CENTER, Plaintiff, Cross-defendant and Respondent, v.
FREMONT INDEMNITY COMPANY, Defendant, Cross-complainant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

458

## COUNSEL

Donahue & Callaham, James E. Donahue and William K. Blakemore for Defendant, Cross-complainant and Appellant.

Greve, Clifford, Diepenbrock & Paras, Anthony C. Diepenbrock and Jozel L. Brunett for Plaintiff, Cross-defendant and Respondent.

## OPINION

SCOTLAND, J.—Plaintiff Alta California Regional Center (Alta) is a defendant in consolidated actions pending in Placer County Superior Court. In that litigation, a disabled person, Elizabeth A., and her parents, Gerald and Mary A., seek recovery for personal injuries arising from a sexual assault on Elizabeth which allegedly resulted from Alta's negligent placement, supervision, entrustment, care and control of Elizabeth in a residential care facility.

At the time of the alleged assault, Alta was insured by a professional liability insurance policy issued by defendant Fremont Indemnity Company (Fremont) and a commercial general liability insurance policy issued by the Great American Insurance Company (Great American). Great American agreed to defend Alta in the underlying litigation. However, Fremont declined to do so and tendered the defense to Great American on the ground the litigation "is not a malpractice lawsuit arising from any injuries resulting from the rendered [*sic*] or failure to render medical services by health care practitioners with Alta . . . ."

Alta filed the instant action for breach of contract and declaratory relief, alleging Fremont was obligated to defend and indemnify Alta in the underlying litigation but failed and refused to do so. Thereafter, Alta learned

Fremont no longer was asserting that its policy did not cover the claims alleged in the underlying litigation. Instead, Fremont's sole contention was that, under the "other insurance" clause of its policy, Fremont was an excess insurer and, therefore, was not obligated to defend or indemnify Alta until the coverage provided by the Great American policy was exhausted.

On cross-motions for summary judgment, the trial court granted summary judgment for Alta. The court ruled that Fremont "waived" application of the "other insurance" clause by failing to assert it when Fremont refused Alta's tender of defense of the underlying litigation. The court then concluded that, having waived the "other insurance" clause, Fremont is a "primary insurer" which has the "present duty" to provide Alta with a defense and indemnification. Accordingly, the trial court entered judgment in Alta's favor, obligating Fremont "to pay all attorney fees and defense costs incurred on behalf of [Alta] in the underlying consolidated action[]." Fremont also was ordered to reimburse Alta for the costs of the instant lawsuit.

In the published portion of this opinion, we conclude the trial court erred in applying the doctrine of waiver to Fremont's belatedly stated ground for limiting its exposure once Alta's claim of coverage was found to be valid. As we shall explain, there is a distinction between an insurer's assertion of lack of coverage and its subsequent claim that, if coverage exists, the coverage is limited under the terms of the policy. If a ground for asserting lack of coverage under an insurance policy could have been discovered by the insurer through reasonable investigation, that ground is waived if the insurer fails to state it at the time a request for coverage is tendered by the insured; consequently, the insurer may not belatedly raise that ground if the reason upon which the insurer initially denied coverage is found to have no merit or if the insurer did not deny coverage at the outset. Application of the waiver rule to disputes over whether coverage exists is designed as an incentive to compel an insurance company to fulfill its duty to thoroughly investigate a claim before denying coverage. However, there is no similar public policy which justifies expanding the waiver rule to a situation where, at the time it denies the insured's request for coverage, the insurer fails to raise policy provisions which limit the scope of coverage to which the insured is entitled under the policy if coverage exists. When it denies a claim outright on the ground of lack of coverage, the insurer has no occasion to assert limitations on coverage. Nothing is gained by compelling the insurer to state the obvious, i.e., if there is coverage, the policy provisions which limit the scope of coverage apply. Therefore, in our view, it is unreasonable to require that—in order to avoid the doctrine of waiver—an insurer which denies a request for coverage also must assert at the outset an inconsistent

theory that coverage (which the insurer believes does not exist) is limited in scope under the terms of the policy. Because summary judgment in this matter was based solely on the trial court's erroneous application of the waiver rule, the ensuing judgment must be reversed.

## FACTS AND PROCEDURAL BACKGROUND

In the underlying litigation, Elizabeth and her parents allege the following: Gerald and Mary A. contracted with Alta for the care, protection, development and education of Elizabeth. Due to her autistic-like disability, Elizabeth was placed by Alta in the Rodgers Care Home under the care of Jan and Kirk Rodgers. Elizabeth's placement in that environment and the care and supervision she subsequently received were negligent. As a result, Elizabeth was sexually assaulted by Kirk Rodgers and suffered substantial mental and physical injuries. Elizabeth's parents relied on Alta's recommendation that Elizabeth be placed in the Rodgers Care Home, and suffered emotional distress when she was sexually assaulted by Kirk Rodgers.

At the time of the underlying acts, Alta was insured by a claims-made-and-reported professional liability insurance policy issued by Fremont, which provides coverage for claims reported against the insured "for injury arising out of the rendering or failure to render . . . professional services," including professional services rendered by social workers employed by Alta. Alta also was insured by a commercial general liability insurance policy issued by Great American, which provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' " caused "by an 'occurrence.' "

Following service of Elizabeth's summons and complaint, Alta requested that both insurers defend it in the underlying litigation. On February 13, 1990, Gregory Matzen, counsel for Fremont, wrote to attorney Paul Kwong, whose law firm was retained by Great American to defend Alta. Matzen stated: "It would appear, based upon my conversations with [Alta's director of administrative services]; yourself; and [Elizabeth's counsel]; that this is not a malpractice lawsuit arising from any injuries resulting from the rendered [sic] or failure to render medical services by health care practitioners with Alta . . . . Accordingly, Fremont . . . is tendering the defense of Alta . . . to Great American, the general liability insuror of Alta . . . . [¶] Please acknowledge the tender by Fremont . . . as to the defense of Alta . . . in the above-entitled matter by the end of this month."

On June 3, 1991, Matzen again wrote to Alta's counsel regarding the obligation to defend Alta in the underlying litigation. Matzen stated in

pertinent part: "A copy of [Fremont's] policy was provided to Mr. Kwong in correspondence of February 13, 1990. It was in the course of that correspondence to Mr. Kwong that I requested a copy of the Great American policy . . . as well as the tendering of the defense in this case to Great American on behalf of [Fremont]. . . . [¶] On April 29, 1991, I received correspondence from your office stating that in your opinion, based upon a review of [Fremont's] policy that had been submitted to Mr. Kwong's attention, [Fremont] had primary duty for liability coverage. As you are well aware, the policy issued by [Fremont] is a medical professional liability coverage covering health care professionals. The allegations arising from this case, according to Mr. Kwong, did not include any reference by [Elizabeth] to the negligent providing of medical care services."

Great American repeatedly demanded that Fremont accept the tender of Alta's defense. Fremont refused to do so and, consequently, Alta filed this action for breach of contract and declaratory relief. Alta alleged that Fremont's refusal to acknowledge Fremont's defense and indemnity obligations constituted a material breach of the insurance contract, as a result of which Alta was compelled to engage counsel to defend it in the underlying litigation and was required to incur attorney fees and litigation expenses.

Fremont answered, denying that it was obligated to indemnify or defend Alta. It also raised various affirmative defenses, including that other persons or entities were responsible for Alta's damages.

Fremont cross-complained against Great American, alleging that Great American, and not Fremont, was obligated to defend and indemnify Alta. Fremont further asserted that, should Fremont "be found liable to Alta under its policy for a defense and indemnity of the underlying actions, . . . Great American would thereby be obligated . . . to indemnify and reimburse Fremont [up to the amount of Great American's policy limits] so as to provide the primary layer of coverage, whereas the policy of Fremont, by its terms, and operation of law would only be excess."

Approximately three months after it instituted its action against Fremont, Alta learned that Fremont no longer contended its policy did not cover the claims asserted against Alta. Instead, Fremont alleged it had no duty to defend Alta because of the "other insurance" clause in its policy which provided: "If the insured has other valid and collectable insurance available, the insurance afforded by this Policy shall not apply unless and until the limits of liability of such other insurance have been exhausted."

The parties filed cross-motions for summary judgment. In its motion for summary judgment, Fremont asserted that the "other insurance" clause

provided a complete defense to Alta's action. In Fremont's view, although its policy covered the claims against Alta, Fremont was obligated to provide only excess insurance coverage; consequently, Fremont had no duty to defend or indemnify Alta until the Great American policy limits were exhausted.

Alta's motion for summary judgment argued that Alta was entitled to judgment as a matter of law because Fremont had "waived its right to claim it is not obligated to defend or indemnify Alta based upon language in its other insurance clause." In support of this contention, Alta asserted: (1) "There can be no dispute that the alleged excess nature of the FREMONT policy should have been evident upon a reasonable investigation [of] ALTA's tender"; (2) Fremont never reached the question of primary versus excess coverage because, due to insufficient investigation, it wrongly concluded the policy provided no coverage at all; and (3) "because FREMONT did not raise [the 'other insurance'] policy defense when it denied ALTA's tender of defense, it has waived the right to do so." Alta also claimed Fremont's "other insurance" clause was inapplicable because the policies of Great American and Fremont did not cover the same risk.

Fremont retorted that it had not waived the application of its "other insurance" clause and also disputed Alta's claim that the two insurance policies applied to different losses or risks.

The trial court entered summary judgment for Alta, ruling: "absent a waiver by Fremont, . . . the language of the Fremont policy renders it an excess policy to the Great American policy for the claims alleged against Alta . . . in the [underlying] litigation"; Fremont "waived the right to rely upon the 'other insurance' policy defense by failing to raise it at the time it refused the tender of the underlying . . . litigation"; and, having waived the "other insurance" clause, Fremont is a "primary insurer" which has the "present duty" to provide Alta with a defense and indemnification. Judgment was entered in Alta's favor, obligating Fremont "to pay all attorney fees and defense costs incurred on behalf of [Alta] in the underlying consolidated action[]." Fremont also was ordered to reimburse Alta for the costs of the instant lawsuit.

On appeal, Fremont contends the trial court erroneously applied the doctrine of waiver because: (1) Alta did not plead waiver in its complaint; (2) Fremont's counsel had no authority to waive his client's substantive rights and did not intend to relinquish any known right; (3) Fremont's counsel acted in reliance on information provided by Alta; and (4) there was no showing of misconduct on the part of Fremont.

We requested supplemental briefing on the following questions: whether the doctrine of waiver (as set forth in the cases relied on by Alta and the trial court) applies to an insurer's defenses which are based on policy provisions other than exclusions from coverage; whether, under the circumstances of the present case, it is inequitable to apply the doctrine of waiver; and whether Fremont is entitled to summary judgment if the judgment for Alta is reversed. The answers to these queries obviate the need to respond to most of Fremont's contentions.

## DISCUSSION

### I

Contending that past cases have invoked the waiver doctrine to preclude an insurer from detrimentally misleading the insured as to the grounds for denial of coverage or from "sandbagging" the insured by constantly raising additional bases for disclaiming coverage, Fremont claims "the facts presently before this court suggest no comparable element of misconduct by Fremont sufficient to support imposition of the waiver doctrine." We agree.

Waiver, which may be express or implied, is the voluntary and intentional relinquishment of a known right. (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 753-754 [161 Cal.Rptr. 322].) An insurer can waive policy provisions which otherwise would defeat coverage. (*Id.*, at p. 754.) In the insurance context, the term "waiver" sometimes is used interchangeably with "estoppel," even though estoppel requires a showing of detrimental reliance by the party asserting it. (*Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1320, fn. 6 [241 Cal.Rptr. 427]; see also *Intel Corp.* v. *Hartford Acc. & Indem. Co.* (9th Cir. 1991) 952 F.2d 1551, 1559.) For example, if an action is brought against an insured and if the insurer, with knowledge of a ground of noncoverage under the policy, assumes and conducts the defense without disclaiming liability and giving notice of its reservation of rights, the insurer is held to have waived its right to assert noncoverage. (*Phoenix Ins. Co.* v. *United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1527, fn. 15 [235 Cal.Rptr. 185]; *Miller* v. *Elite Ins. Co.*, *supra*, at p. 754.) This theory of waiver rests upon the doctrine of estoppel. (*Insurance Co. of the West* v. *Haralambos Beverage Co.*, *supra*, at p. 1320.) " 'The insurer's undertaking defense of the third party suit creates a high potential for misleading the insured, by creating the impression that the insurer is not disputing coverage. And, the insured may rely thereon by failing to retain independent counsel to negotiate or defend the

action.' [Citation.]" (*Phoenix Ins. Co.* v. *United States Fire Ins. Co., supra,* at p. 1527, fn. 15, italics omitted.) In insurance cases where waiver has been found, there generally is some element of misconduct by the insurer or detrimental reliance by the insured. (*Intel Corp.* v. *Hartford Acc. & Indem. Co., supra,* at p. 1559; accord, *B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 86, fn. 7 [9 Cal.Rptr.2d 894].)

■■■ Relying on two federal district court cases interpreting California law (*McLaughlin* v. *Connecticut General Life Ins. Co.* (N.D.Cal. 1983) 565 F.Supp. 434 and *Zumbrun* v. *United Services Auto Ass'n.* (E.D.Cal. 1989) 719 F.Supp. 890), Alta claimed, and the trial court found, that Fremont had waived the "other insurance" clause in its policy because it did not refer to the clause at the time it denied coverage in response to Alta's tender of defense.

In *McLaughlin* v. *Connecticut General Life Ins. Co., supra,* a health insurer denied coverage for an experimental cancer therapy on the ground the therapy was not approved by the Food and Drug Administration. The insured sued the insurance company for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of Insurance Code 790.03, subdivision (h). (565 F.Supp. at pp. 437-438.) Thereafter, the insurer asserted several other defenses, arguing the therapy was not covered under the policy because it was not necessary, was not prescribed and was unlawful. (*Id.,* at p. 451.) The district court refused to consider these defenses, ruling: "Though no California court has decided the issue, this court concludes that the California Supreme Court would hold that an insurance company which relies on specified grounds for denying a claim thereby waives the right to rely in subsequent litigation on any other grounds which a reasonable investigation would have uncovered." (*Ibid.*)

The district court based its determination upon *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141], wherein the California Supreme Court ruled that the implied covenant of good faith and fair dealing requires an insurance company to investigate thoroughly its insured's claims, and that ". . . an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." (*Id.,* at p. 819; *McLaughlin* v. *Connecticut General Life Ins. Co., supra,* 565 F.Supp. at p. 451.) According to the district court, "[i]f an insurance company could deny a claim without thoroughly investigating it and then defend a subsequent lawsuit on grounds which it develops during discovery for trial, the company's incentive to fulfill its duty to investigate would be significantly diminished." (*McLaughlin* v. *Connecticut*

*General Life Ins. Co., supra*, at p. 451; accord, *Intel Corp.* v. *Hartford Acc. & Indem. Co., supra*, 952 F.Supp. at p. 1560; *Zumbrun* v. *United Services Auto Ass'n., supra*, 719 F.Supp. at p. 896.)

In *Zumbrun* v. *United Services Auto Ass'n., supra*, the district court adopted the holding in *McLaughlin* v. *Connecticut General Life Ins. Co., supra*, stating that to permit an insurer to deny coverage by asserting previously unarticulated policy-based defenses in subsequent litigation "would in effect reward an insurer who has breached the covenant of good faith and fair dealing by failing to adequately investigate a claim before rejecting it by providing it with a defense which, had it timely performed its duty, would have precluded the litigation in the first place." (*Zumbrun* v. *United Services Auto Ass'n., supra*, 719 F.Supp. at p. 896.) In other words, the previously unarticulated policy-based defense of lack of coverage is waived due to the insurer's misconduct in failing to adequately investigate the insured's claim and because of the detriment to the insured of having to litigate whether coverage exists under the policy.

However, the *Zumbrun* court concluded the waiver rule does not apply to defenses based on policy provisions which seek to limit the amount of insurance benefits. (719 F.Supp. at p. 897.) The court tersely reasoned that, when an insurer denies a claim outright, it has no occasion to assert limitations on coverage. (*Ibid.*) Therefore, "[t]he defenses subject to the waiver rule go to whether the claimed loss is covered by the policy" (*Becker* v. *State Farm Fire and Cas. Co.* (N.D.Cal. 1987) 664 F.Supp. 460, 461-462), and not to whether policy provisions limit the scope of coverage to which the insured is entitled if coverage exists. (*Zumbrun* v. *United Services Auto Ass'n., supra*, 719 F.Supp. at p. 897.)

The reason for this distinction is sound. Application of the waiver rule to disputes over whether coverage exists is designed as an incentive to compel an insurance company to fulfill its duty to thoroughly investigate a claim before denying coverage. Alta advances no similar public policy which would justify expanding the waiver rule as an incentive to force an insurer which has denied coverage to take the added step of asserting the inconsistent theory that coverage, which the insurer believes does not exist, is limited under the terms of the policy. The failure of an insurer who has denied coverage to "hedge its bet" by asserting at the outset a limitation on the scope of coverage, just in case coverage later is found to exist, is not akin to the insurer's misconduct in failing to thoroughly investigate the circumstances of the claim before denying coverage. Nothing is gained by compelling the insurer to state the obvious, i.e., if there is coverage, the policy

provisions which limit the scope of coverage apply. Hence, an erroneous denial of coverage should not act as a waiver of policy limitations once coverage is found to exist. As to the scope of coverage available under the policy, the insurer should be permitted to stand on the language of the policy for which the parties contracted. Otherwise, the insured would receive an unjustifiable windfall. For example, it is enough that, where an insurance contract does not provide coverage but the insurer fails to assert at the outset the correct ground for denying coverage, the waiver doctrine permits the insured to receive coverage where none exists. No public policy is served in adding insult to injury by also precluding the insurer from asserting policy provisions which limit the scope of benefits available under the policy.

Here, Fremont's "other insurance" clause is not an exclusion from coverage under the policy, and Fremont is not attempting to raise a new ground for denial of coverage. Instead, Fremont concedes the claims against Alta are covered by Fremont's policy. The "other insurance" clause merely limits the scope of coverage by transforming Fremont into an "incidental excess" insurer, with a duty to indemnify Alta and share in the costs of Alta's defense once Great American's policy limits are exhausted. (*Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 368 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75]; *Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1296 [260 Cal.Rptr. 190]; *Phoenix Ins. Co.* v. *United States Fire Ins. Co.*, *supra*, 189 Cal.App.3d at p. 1528.)[1]

When Fremont initially denied Alta's claim outright, it had no occasion to assert its "other insurance" clause which applies only if there is coverage under the policy. (*Zumbrun* v. *United Services Auto Ass'n.*, *supra*, 719

[1]The Great American policy also has an "other insurance" clause, which provides in pertinent part: "If other valid and collectible insurance is available to the insured for a loss we cover . . . , our obligations are limited as follows: [¶] a. Primary Insurance [¶] This insurance is primary . . . [and] . . . our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below. . . . [¶] c. Method of Sharing [¶] If all of the other insurance permits contribution by equal shares, we will follow this method also. . . . [¶] If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. . . ." This is a "pro rata" type of "other insurance" clause. (*Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.*, *supra*, 211 Cal.App.3d at p. 1296.) Where an insured's loss is covered by two insurance policies, with one containing a pro rata "other insurance" clause and the other policy containing an excess "other insurance" clause, the policy with the pro rata "other insurance" clause must provide primary coverage and the other policy provides only excess coverage. (*Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318, 328 [54 Cal.Rptr. 385, 419 P.2d 641], disapproved on another point in *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 199 [84 Cal.Rptr. 705, 465 P.2d 841]; *Donahue Constr. Co.* v. *Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 302-303 [86 Cal.Rptr. 632].)

F.Supp. at p. 897.) As we have explained, at the time it denies coverage an insurer must state all grounds for noncoverage which are reasonably discoverable; however, there is no good reason to require the insurer to additionally assert that, if there is coverage, the various policy provisions which limit the scope of coverage still apply. Accordingly, under the circumstances of this case, there was no misconduct by Fremont requiring the imposition of the penalty of waiver as applied by the trial court.

Alta contends that, even if Fremont's "other insurance" clause is not considered to be an exclusion from coverage which must be raised at the outset, Fremont may be found to have waived the clause because any provision of a policy included for the benefit of the insurer may be waived. As examples, Alta points out that an insurer will be deemed to have waived a policy condition requiring the insured to file a proof of loss if the insurer denies coverage without referring to the proof of loss requirement (*Enfantino* v. *United States Fire Ins. Co.* (1931) 116 Cal.App. 729, 731-732 [3 P.2d 331]), and that an insurer may waive a one-year contractual limitations clause (*Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 689-690 [274 Cal.Rptr. 387, 798 P.2d 1230]). Alta also cites *Maier Brewing Co.* v. *Pacific Nat. Fire Ins. Co.* (1963) 218 Cal.App.2d 869 [33 Cal.Rptr. 67] for the proposition that " 'the insurer may not repudiate the policy, deny all liability, and at the same time be permitted to stand on a provision inserted in the policy for its benefit.' " (*Id.*, at p. 879.)

The rule quoted from *Maier Brewing Co.* v. *Pacific Nat. Fire Ins. Co.*, *supra*, and relied on by Alta, is taken out of context. This rule generally is applicable where an insurer denies all liability under the policy and then seeks to raise, as a defense to the insured's lawsuit, the insured's failure to perform some previously unarticulated policy-based obligation. (218 Cal.App.2d at pp. 878-880 [insurer waived requirement that insured file a proof of loss]; see also *Culley* v. *New York Life Ins. Co.* (1945) 27 Cal.2d 187, 195-196 [163 P.2d 698] [insurer waived insured's failure to pay premium arrearages]; *Farnum* v. *Phoenix Insurance Co.* (1890) 83 Cal. 246, 262-263 [23 P. 869] [insurer waived insured's failure to arbitrate the amount of loss]; *Estrada* v. *Indemnity Ins. Co.* (1958) 158 Cal.App.2d 129, 138 [322 P.2d 294] [insurer waived the insured's failure to forward to the insurer a summons and complaint]; *Comunale* v. *Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198, 202-203 [253 P.2d 495] [insurer waived the insured's failure to submit a written notice of accident]; *Enfantino* v. *United States Fire Ins. Co.*, *supra*, 116 Cal.App. at pp. 731-732 [insurer waived insured's failure to file a proof of loss].)

The reason for this rule is that, where the insurer denies all liability under the policy, the insured is misled into believing it would be futile for the

insured to file a proof of loss, pay premium arrearages, or otherwise perform any affirmative obligation under the policy. (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 762-763 [15 Cal.Rptr.2d 815]; *Estrada* v. *Indemnity Ins. Co., supra,* 158 Cal.App.2d at p. 138; *Ruffino* v. *Queen Ins. Co.* (1934) 138 Cal.App. 528, 537 [33 P.2d 26].) In other words, the insurer is deemed to have waived the insured's failure to perform because the nonperformance is attributable to the insurer's conduct.

■ Similarly, an insurer waives a contractual limitations period in the policy where the insurer's conduct causes the insured's noncompliance with the limitations period. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at pp. 689-690.) However, if the limitations period already has expired at the time the insurer denies the claim, the mere failure to cite the contractual statute of limitations provision in the insurer's denial letter cannot, as a matter of law, amount to a waiver (*id.,* at p. 690, fn. 5, citing *Becker* v. *State Farm Fire and Cas. Co., supra,* 664 F.Supp. at pp. 461-462) presumably because the insured's failure to comply with the limitations period is not the insurer's fault.

■ Here, Fremont has not raised the nonperformance of any policy provisions as a defense to Alta's action. Fremont simply is asserting that Alta's claims are covered under the policy, but that Fremont's obligations are limited to those of an incidental excess insurance carrier. Consequently, the cases relied on by Alta are inapposite. Because Fremont's "other insurance" clause is not a ground for disclaiming all liability under the policy, Fremont did not commit misconduct, and thereby waive this clause, when it failed to mention the clause at the time it denied Alta's claim. (*Zumbrun* v. *United Services Auto Ass'n., supra,* 719 F.Supp. at p. 897; *Becker* v. *State Farm Fire and Cas. Co., supra,* 664 F.Supp. at pp. 461-462.)

■ Nor can imposition of the waiver doctrine be justified in this case on the theory of detrimental reliance. (*Intel Corp.* v. *Hartford Acc. & Indem. Co., supra,* 952 F.2d at p. 1559; *B & E Convalescent Center* v. *State Compensation Ins. Fund, supra,* 8 Cal.App.4th at p. 86, fn. 7.) According to the record, Great American was, and is, defending Alta in the underlying litigation and does not dispute that potentially recoverable damages in the litigation are covered by its policy. Fremont has acknowledged that it has an obligation to defend and to indemnify Alta once Great American's policy limits are exhausted or if Great American withdraws its defense. Hence, Alta is not left unprotected by Fremont's initial refusal to defend, and Alta will not be harmed by application of the "other insurance" clause because Alta still will receive the full benefit of both of its insurance policies. (Cf.

*Donahue Constr. Co.* v. *Transport Indem. Co., supra,* 7 Cal.App.3d at p. 304; cited with approval in *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 19 [123 Cal.Rptr. 288, 538 P.2d 744].) Courts generally enforce excess coverage provisions, particularly where the rights of the insured are unaffected by its application and there is no reasonable expectation of primary coverage. (*Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 835 [192 Cal.Rptr. 207].)

Alta asserts that, if Fremont is not deemed to have waived the "other insurance" clause, Alta will be harmed because it will be deprived of the primary coverage it thought it was paying for when it purchased the Fremont policy. However, this is true any time an insured purchases primary coverage and the policy contains an incidental excess "other insurance" clause. Alta has cited no authority holding that this result renders an unambiguous excess "other insurance" clause unenforceable. Moreover, the alleged harm referred to by Alta does not result from Fremont's failure to raise the "other insurance" clause when it denied Alta's claim. Therefore, it does not lend support to the theory of waiver pursued by Alta in the trial court.

Furthermore, under the facts of this case, it would be manifestly unjust to preclude Fremont from asserting its "other insurance" clause. In addition to an absence of harm to Alta from enforcement of the "other insurance" clause, Alta will not actually benefit if Fremont is deemed to have waived this clause and is required to provide primary insurance coverage instead of excess coverage. The major consequence of such a determination is that Great American and Fremont, as insurers providing primary coverage, will share the costs of defense and indemnification equally rather than Fremont being liable only on a prorated basis depending upon whether the policy limits of Great American's policy are exhausted. (*Pacific Employers Ins. Co.* v. *Maryland Casualty Co., supra,* 65 Cal.2d at p. 328.) Clearly, the beneficiary of such an arrangement is Great American, not Alta.[2]

For the aforementioned reasons, we conclude the trial court erred in determining that Fremont had a duty to defend at the outset because it

---

[2]The only detriment incurred by Alta is the cost of the instant lawsuit which, arguably, Alta may not have pursued if at the outset Fremont had acknowledged coverage but asserted the "other insurance" clause. However, three months after this lawsuit was instituted, Fremont conceded the claims against Alta were covered under its policy. At that time, Alta's litigation-related expenses undoubtedly were minimal. Alta chose to contest Fremont's right to rely on the "other insurance" clause (and thereby increased its litigation costs) even though the application of waiver would not benefit Alta and the application of the "other insurance" clause would not harm Alta. It is interesting to note that the law firm representing Alta in the present action is the same firm which Great American selected to represent Alta in the underlying litigation and also is the same firm which is representing Great American in Fremont's cross-complaint against Great American for declaratory relief. It appears to us that

waived the "other insurance" clause of its policy by failing to assert the clause when Fremont denied coverage. Since the subsequent judgment obligating Fremont "to pay all attorney fees and defense costs incurred on behalf of [Alta] in the underlying consolidated action[]" was based on the trial court's erroneous application of the waiver rule, the judgment cannot stand.

## II

Alta suggests the judgment must be affirmed because, even if Fremont did not waive its "other insurance" clause, Fremont had a duty to defend Alta and breached that duty when Fremont refused Alta's tender of defense. Citing primarily *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455], Alta claims Fremont had a duty to defend, and must share the full costs of Alta's defense, despite its "other insurance" clause because "the Fremont policy was not written specifically over the Great American policy as excess, but rather, was a separate primary policy. As a primary policy, it provided for a duty of defense in the insuring agreement, which was not negated or limited in the 'other insurance' clause."

This contention raises the interesting issue of whether an "incidental excess" insurer (see *Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.*, *supra*, 211 Cal.App.3d at p. 1296) has a duty to defend at the outset due to the possibility the claim may exceed the primary insurer's coverage and, thus, be covered by the incidental excess policy, or whether the incidental excess insurer's duty to defend does not arise until the primary policy limits are exhausted. (Compare *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153] [a liability insurer " 'owes a broad duty to defend against claims that create a potential for indemnity. . . . Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded' "] with *Signal Companies, Inc.* v. *Harbor Ins. Co.*, *supra*, 27 Cal.3d at pp. 367-368 [requiring an excess insurer "to contribute to the defense costs incurred by the primary carrier even though excess liability might never attach . . . would be contrary to that line of cases which hold that where there is excess coverage, whether by virtue of an excess clause in one policy or otherwise, it is the primary insurer which is solely liable for the costs of defense if the judgment does not exceed primary coverage"] and *Continental Casualty Co.* v. *Royal Ins. Co.* (1990) 219 Cal.App.3d 111, 119 [268 Cal.Rptr. 193]

---

the present action was pursued more for the benefit of Great American than Alta. Counsel in effect used one client (Alta) to obtain a benefit for another client (Great American).

[an excess insurer "has no duty or right to participate in the defense, absent contract language to the contrary, until the primary policy limits are exhausted"].)

We decline to address this issue since the contention was not raised by Alta in the trial court either in support of its motion for summary judgment or in opposition to Fremont's motion for summary judgment, and because the trial court did not rely on this theory in entering judgment in Alta's favor. (Cf. *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 618 [222 Cal.Rptr. 276].)

Of course, Alta is free to pursue its new argument in the trial court upon remand.

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

#### DISPOSITION

The judgment is reversed.

Sparks, Acting P. J., and Nicholson, J., concurred.

---

*See footnote, *ante*, page 455.