**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE CLINTON, an individual,<br><br>　　　　Plaintiff - Appellant,<br><br>　v.<br><br>UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; UMG RECORDING, INC., a Delaware corporation,<br><br>　　　　Defendants - Appellees. | No. 08-56693<br><br>D.C. No. 2:07-cv-00672-PSG-JWJ<br><br><br>MEMORANDUM * |
| GEORGE CLINTON, an individual,<br><br>　　　　Plaintiff - Appellee,<br><br>　v.<br><br>UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; UMG RECORDING, INC., a Delaware corporation,<br><br>　　　　Defendants - Appellants. | No. 08-56765<br><br>D.C. No. 2:07-cv-00672-PSG-JWJ |

---

　　　* 　This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted March 3, 2010
Pasadena, California

Before:    KOZINSKI, Chief Judge, W. FLETCHER, Circuit Judge, and
           GETTLEMAN,[**] District Judge.

Because Article III standing is a threshold question, we address it first.

Clinton alleges that UMG failed to pay him adequate royalties. This allegation is

clearly sufficient to establish standing under Article III.

We reverse the district court's grant of summary judgment in favor of UMG

on five of Clinton's claims.[1] There are several issues of genuine material fact that

affect all five claims.

Taken in the light most favorable to Clinton, the facts suffice to make

Clinton either a third party beneficiary or a real party in interest. UMG is

estopped, as a result of its own conduct, from relying on any purported waiver in

the Inducement Letter.

_____

[**] The Honorable Robert W. Gettleman, United States District Judge for
the Northern District of Illinois, sitting by designation.

[1] A sixth claim, for declaratory judgment regarding the "Parlet Agreement,"
is not before this court on appeal.

2

No one disputes that the parties agreed to toll limitations periods relevant to the royalty statements. There is, however, a question as to the nature and form of that agreement. In their briefs, the parties refer to letters from UMG to Clinton's representatives as the "tolling agreements." However, the language of the letters indicates that they are not themselves agreements, but rather purport only to describe prior agreements. Under California law, an oral contract may be binding, and oral and written evidence may be used to establish the terms of such a contract. *Netbula, LLC v. BindView Development Corp.*, 516 F. Supp. 2d 1137, 1155 n.10 (N.D. Cal. 2007) (citing California cases). We leave it to the district court on remand to determine the nature and validity of the tolling agreement undertaken by the parties here.

Assuming there was a valid tolling agreement, there is a genuine issue of material fact as to the period tolled by the agreement. The letters refer to the "statute of limitations," but it is not clear that the statutory period was the only period tolled by the agreement.

The letters indicate that they were written during negotiations over the audit of the royalty statements. In the context in which they were written, the letters could be read to refer to the contractual period during which Clinton could conduct those audits and object to the statements. For example, this is suggested by the

April 25, 2006 letter from UMG which noted that Clinton's auditors had requested "an additional extension of the *audit tolling period*." (emphasis added). Further, the first tolling letter from UMG to Clinton's representative is dated just two days before the expiration of the contractual limitations period in which Clinton could object and file a claim regarding the initial royalty period. The statutory period would not expire for another year. In addition, the nine tolling extension letters were signed after some of the contractual periods had expired, and the last extension post-dates expiration of *all* contractual periods. This suggests that the parties intended to toll the contractual periods, since there would have been little purpose to continue extending the statutory limitations periods when the expiration of the contractual periods would already bar suit. Similarly, the March 2005 settlement offer from UMG post-dates the contractual limitations periods for three of the royalty periods, yet makes no mention of the fact that half of Clinton's claims were already time-barred under UMG's proposed interpretation.

Under California law, evidence is admissible to demonstrate that terms in a writing were used and understood in "a local . . . or otherwise peculiar" way. Cal. Code Civ. Pro. § 1861. California law also permits reference to the circumstances under which a contract was made as a means of explaining the contract. Cal. Civ. Code § 1647. *See also Hellinger v. Farmers Group, Inc.*, 91 Cal. App. 4th 1049,

1057 (2001) (holding that legislature's use of "statute of limitations" applied to contractual limitations as well because a more narrow interpretation would be unreasonable in light of legislative intent); *Juarez v. 21st Century Ins. Co.*, 105 Cal. App. 4th 371, 376 (2003) (referring, in citation parenthetical, to contractual limitation as "policy's contractual one-year statute of limitations"); *Alta Cal. Regional Ctr. v. Fremont Indemnity Co.*, 25 Cal. App. 4th 455, 468 (1994) (referring to insurance policy's "contractual statute of limitations provision"); *Dube v. NetManage, Inc. Long-Term Disability Plan*, 2009 WL 3837240, *6 (N.D. Cal. 2009) (noting lawyer's incorrect use of the term "statute of limitations" instead of "contractual limitations"). The circumstances in this case create a question of fact as to a possible "peculiar" use of the term "statute of limitations" in the tolling agreements.

Further, UMG, rather than Clinton, wrote the letters using the term "statute of limitations," and under California law language should be interpreted against the party who caused the uncertainty. Cal. Civ. Code § 1654. Similarly, if upon remand the district court finds that this is a case of unilateral mistake and that UMG was aware of Clinton's interpretation of the term but failed to explain it, Clinton's interpretation would prevail. *See Merced County Sheriff's Employee's Assn. v. County of Merced*, 188 Cal. App. 3d 622, 670 (1987).

5

Finally, we agree with the district court's analysis as to the definition of date "rendered," with the caveat that the district court's calculations were 90 days short. This issue was not appealed and is addressed now only in the event that it becomes relevant on remand. Absent timely objection, royalty statements are to be deemed rendered "on the last date such statement is due." SER 307 ¶ 21. The statements are due within 90 days after the last day of the royalty period, SER 306 ¶ 18, so the rendered dates would also be 90 days after the last day of the royalty period.

In sum, we **AFFIRM** the district court as to Clinton's standing, both under Article III and under the contracts. Because several genuine issues of material fact exist, we **REVERSE** the district court's grant of summary judgment to UMG and **REMAND** for further proceedings consistent with this disposition.

Each party to bear its own costs on appeal.