Filed 3/27/15  Castrejon v. United States Liability Ins. Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANGEL CASTREJON et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> UNITED STATES LIABILITY INSURANCE COMPANY, <br><br> Defendant and Respondent. | D064679 <br><br><br> (Super. Ct. No. 37-2010-00104436-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Affirmed.

Winters & Associates, Jack B. Winters, Jr. and Georg M. Capielo for Plaintiffs and Appellants.

Murchison & Cumming, Bryan M. Weiss and Nancy N. Potter for Defendant and Respondent.

A liability insurance policy that expressly excludes coverage of both real estate sales transactions and fraudulent transactions does not cover either 1) the listing for sale

of real property or 2) a loan transaction that the plaintiff homeowners were unaware of and that, at all times, they have asserted was fraudulent. Hence, we affirm a judgment entered in favor of respondent insurer with respect to claims that it improperly declined to defend the perpetrators of the mortgage loan fraud.

FACTUAL AND PROCEDURAL BACKGROUND

A. Sales Listing

In January 2007, plaintiffs and appellants Angel Castrejon and Chetana Castrejon decided to move from California to Tennessee. Because they had previously refinanced a mortgage working with Llewellen Labio, a licensed real estate agent, they contacted her and signed a listing agreement with her and the mortgage company where she was an agent, Century Mortgage, Inc. (Century). Arsalan Saadatirad was the real estate broker of record at Century and he signed the listing agreement. The listing agreement permitted Labio and Century to market the sale of the Castrejons' San Diego home.

B. Loan

In addition to the listing agreement, Labio presented the Castrejons with other documents that Labio assured them were a routine part of the sale. Shortly after their home was listed for sale, Labio told the Castrejons that their home had been sold and that the transaction had closed. The Castrejons then received a wire transfer in the amount of $10,739 with an explanation from Labio that it was a portion of the proceeds of the sale. Closing documents the Castrejons thereafter received showed that $128,500 had been diverted from the transaction to a third party unknown to the Castrejons, Llewmia Company (Llewmia).

When the Castrejons inquired of Labio about the diversion, they received a second

2

wire transfer in the amount of $75,000 along with a note which stated that Labio, Saadatirad, and Century could only pay that amount. Upon further investigation, the Castrejons discovered that in fact their home had not been sold, but that Labio and Saadatirad had used the documents the Castrejons had provided to obtain a loan against their home and that the loan proceeds had been diverted to Llewmia, a company that Labio controlled.

C. Castrejons Claims Against Labio, Saadatirad and Century

In October 2007, the Castrejons filed a complaint against Labio, Saadatirad and Century. The complaint alleged the Castrejons had been damaged as a result of the defendants' fraud and conversion.

In April 2008 and again in November 2008, Saadatirad and Century tendered defense of the Castrejon action to defendant and respondent United States Liability Insurance Company (USLIC). USLIC had issued Century two successive liability policies commencing in 2006. USLIC declined both tenders. USLIC asserted that Century's policy did not cover real estate brokerage services such as those alleged in the Castrejons' complaint.

In January 2009, after they had answered the Castrejons complaint and after their second tender of defense had been declined by USLIC, Saadatirad and Century reached a settlement with the Castrejons. Saadatirad and Century assigned their rights against USLIC to the Castrejons and admitted they were liable to the Castrejons on a theory of negligent supervision. Saadatirad, Century and the Castrejons further agreed the trial court could determine the amount of the Castrejons' damages and that, if the Castrejons were unable to recover from USLIC, they could enforce any trial court judgment against

3

Saadatirad and Century.

Thereafter, Labio, Saadatirad and the notary who prepared the fraudulent loan documents were convicted of theft and forgery related felonies growing out of the Castrejon transaction.

### D. Trial Court Proceedings

The Castrejons sued USLIC on the bad faith and breach of contract claims Saadatirad and Century had assigned them. USLIC moved for summary judgment on the grounds the Castrejons' underlying claims were not covered because the USLIC policy only covered loan transactions and because the claims grew out of Saadatirad's and Century's fraudulent conduct. The trial court denied the motion. In particular, the court found that at the time defense of the Castrejons' claim was tendered to USLIC, it was not certain as a matter of law that there was no possibility of coverage.

Thereafter, the trial court conducted a nonjury trial of the Castrejons' claims against USLIC and found in favor of USLIC. The trial court concluded that the USLIC policy only covered mortgage transactions, not real estate sales transactions, and that "[t]his was not a legitimate mortgage transaction at all. The transaction was a fraudulent scheme clothed as a mortgage transaction. It was a way to steal money from the people that owned this house. As alleged by the First Amended Complaint in the underlying case, this was either a real estate sales transaction, or it was a fraud, neither of which would be covered."

Judgment was entered in favor of USLIC, and the Castrejons filed a timely notice of appeal.

DISCUSSION

On appeal, the Castrejons contend the trial court erred in its interpretation of the USLIC policy in effect at the time the loan transaction and diversion occurred and assert the policy covered both real estate transactions and mortgage transactions. They further argue that because the underlying complaint alleged claims for both intentional and negligent conduct, and alleged that both Saadatirad as well as Century were liable, Century's potential liability for negligent conduct gave rise, at the very least, to a duty to defend it. For the reasons we set forth below, we affirm the trial court's judgment in favor of USLIC.

I

We of course review questions of law, including the interpretation of contracts where no parole or extrinsic evidence has been offered, de novo. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) Generally, we review the admission or exclusion of evidence for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) It is axiomatic that we review the trial court's factual determinations for substantial evidence. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.) Importantly, where, as here, it appears from the record on appeal the appellant did not request any additional findings, we are required to imply any reasonable findings that support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

II

In their principal argument on appeal, the Castrejons contend that, in determining that the USLIC policy did not provide coverage for real estate sales services, the trial court erred. We find no error.

A. Coverage Provisions of the USLIC Policy

Century initially obtained liability insurance from USLIC in 2006. With respect to the 2006 policy the trial court made the following findings:

"a. . . . Century[] originally submitted an application to United States Liability Insurance Company ('USLIC') seeking insurance for a mortgage brokerage company, stating that the only business of the company was mortgage brokerage and that Arsalan Saadatirad was the President of Century Mortgage.

"b. USLIC issued a Professional Liability policy effective April 19, 2006 to April 19, 2007, which, on the Declarations page, in Section VIII, provided that the policy was issued to provide coverage 'Solely in the performance of Professional Services as a(n) Mortgage Broker for others for a fee.'

"c. The 2006-2007 policy also included a 'Mortgage Brokers Endorsement' and a Professional Services Endorsement which provided in pertinent part that USLIC was not obligated to defend or indemnify claims arising out of services as a Real Estate Agent or Broker."

In 2007, Century renewed its USLIC policy. With respect to the renewed policy, which was in place at the time the Castrejons were the victims of Labio's and Saadatirad's fraud, the trial court found:

"d. Prior to April 19, 2007 Saadatirad/Century requested renewal of the USLIC policy, and in connection with the renewal, completed a Specified Professions Professional Liability Renewal Application. That Renewal Application asked if there had been any change to the nature of the business and Saadatirad answered 'No' and signed the application.

6

"e.  USLIC issued a Policy Renewal Certificate which stated:  'Please attach this Renewal Certificate to your expiring policy.[']  The lower portion of the Renewal Certificate contained the Declarations for the renewal of the policy for the period April 19, 2007-2008.  The Declarations did not include a Section VIII.  [See Trial Exhibit No. 3]

"f.  USLIC also provided Century Mortgage with an updated Mortgage Brokers Endorsement which was made part of the 2007-08 policy.  The 2007-08 policy included the same Professional Services Endorsement as the 2006-07 policy, excluding coverage for services as a Real Estate Agent or Broker."

Based on these findings the trial court concluded that the second USLIC policy unambiguously excluded coverage for real estate sales or brokerage services.  The trial court stated:

"a.  The 2007-08 policy was not ambiguous because the declarations page did not include item VIII.  The determination of ambiguity of a policy is based upon the reasonable expectations of the insured.  While there was no actual testimony from the insured as to his expectations, and such testimony would, in any event[,] be suspect in view of subsequent events, the reasonable expectations can be determined from the context of the transaction:  the insured asked for mortgage brokerage coverage.  He received an original policy which was limited to mortgage brokerage services, which contained a mortgage brokers endorsement, and which excluded real estate sales or brokerage activities.  When the insured asked for a renewal of the policy, he represented that the business of Century Mortgage had not changed.  He received a policy which included a new mortgage brokers endorsement form and which still excluded services as

7

a real estate agent or broker. USLIC asked that it be attached to the previous year's policy. The declarations page was missing Item VIII, but in view of what Century/Saadatirad had asked for, what they had received in the past, the Mortgage Brokers form on both policies and the exclusion for Real Estate Sales or Broker services on both policies, the 2007-08 policy was not ambiguous as to whether it would provide coverage for real estate sales or brokerage."

B. Analysis

The 2007-2008 policy contained the following Professional Services Exclusion Endorsement: "In consideration of the premium paid, it is agreed that the Company shall not be liable to make any payment for **Loss** or **Defense Costs** in connection with any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failure to render **Professional Services** by any Accountant, Insurance Agent or Broker, Lawyer, Medical Professional, Real Estate Agent or Broker, Title Insurance Agent/Abstractor and Escrow Agent."

It is well established that "insurers have the right to limit policy coverage in plain and understandable language and can limit the character and extent of the risk assumed." (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 749.) When it is asserted, as here, that a limitation on coverage set forth in a policy is ambiguous and that the ambiguity should be interpreted in favor of the insured, we must apply the rules of construction, which govern all contracts: "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to

8

the mutual intention of the parties.  [Citation.]  If contractual language is clear and explicit, it governs.  [Citation.]  On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.'  [Citations.]  This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.'  [Citation.]  Only if this rule does not resolve the ambiguity do we then resolve it against the insurer.  [Citation.]

"In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations.  In so doing, the court must interpret the language in context, with regard to its intended function in the policy.  [Citation.]  This is because 'language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'  [Citations.]"  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265, italics omitted.)

In the context of an initial policy application that stated Century was a mortgage broker, an application for a renewal that stated Century's business had not changed and successive policies that expressly excluded real estate services, like the trial court, we interpret the USLIC policy as unambiguously excluding coverage for real estate sales transactions.  The absence of a declarations clause in the second policy that would have more fully defined mortgage services covered by the policy did not in any manner eliminate or reduce the scope of the real estate services exclusion.

9

The Castrejons also argue that, in any event, the USLIC policy covered their negligent supervision claim against Century, as opposed to their separate claims against Labio and Saadatirad. We disagree. The trial court's implied finding that no claims arising out of the fraud practiced by Labio and Saadatirad were covered is fully supported by the record.

Both the 2006-2007 policy and the 2007-2008 policy provided: "This Policy does not apply to, and the **Company** will not defend or pay **Loss** for, any **Claim** arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged: [¶] A. criminal, fraudulent, dishonest or discriminatory act or omission . . . ." Provisions such as this, which apply to a particular class of acts rather than to particular actors or insureds, exclude coverage not only for claims against the actual perpetrators of a fraud but derivative claims against their supervisors or employers based on a theory of negligent supervision. (See *Medill v. Westport Ins. Corp.* (2006) 143 Cal.App.4th 819, 832 [exclusion for violation of securities laws applies to all insureds even if only committed by one].)[1] Thus, this case is plainly distinguishable from the holding in *Smith Kandal Real Estate v. Continental Casualty Co.* (1998) 67 Cal.App.4th 406, 415, upon which the Castrejons rely. In that case, the court considered an exclusion that applied only to certain insureds, not a class of acts.

---

[1] The express exclusion in USLIC's policy, which applies to fraudulent acts as opposed to actors or insureds, is broader than the provisions of Insurance Code section 533 which states: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

Moreover, where, as here, the record shows Saadatirad, the principal of Century, was engaged in the fraudulent scheme, there is no reasonable possibility the corporate entity he controlled would have ever had the power to discipline him, and, hence, there was no possibility it would be held liable on a theory of negligent supervision of him or Labio, his coconspirator. (See *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1605.)

IV

The Castrejons also suggest that because in declining Saadatirad's and Century's tenders of defense USLIC relied on the real estate services exclusion, it could not later rely on the intentional fraud exclusion as relieving it of its duty to defend. We disagree. USLIC's letters declining to provide a defense to Saadatirad and Century did not waive its right to later assert other grounds for declining coverage, and there is no other evidence suggesting that it intended to forego any other defense, including the intentional fraud that gave rise to the Castrejons' underlying claims. As the court in *Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at pages 31-32 stated in rejecting such a waiver argument: "California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial. (*State Farm Fire & Casualty Co. v. Jioras* (1994) 24 Cal.App.4th 1619, 1628, fn. 7 ['Waiver depends solely on the intent of the waiving party, and is not established merely by evidence the insurer failed to specify the exclusion in a letter reserving rights.']; cf. *Titan Corp. v. Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 467; *Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th

11

712, 722 ['Whether a waiver has occurred depends solely on the intention of the waiving party. [Citation.] An intention to waive a limitations provision is not evinced by the failure to raise that point in a letter denying a claim.']; *California Union Ins. Co. v. Poppy Ridge Partners* (1990) 224 Cal.App.3d 897, 902 [insurer's reliance on particular policy provision to deny coverage does not preclude insurer from later claiming rights under other provisions]; contra, *Alta Cal. Regional Center v. Fremont Indemnity Co.* (1994) 25 Cal.App.4th 455, 466 [dictum stating that where insurance contract does not provide coverage but insurer fails to assert correct ground for denying coverage, automatic waiver doctrine permits insured to receive coverage where none exists].)"

Although not asserted in USLIC's letter declining coverage, in light of the entirely fraudulent nature of the Castrejon transaction, at the time coverage was denied there was in fact no potential for coverage. (See *Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 37 [no duty to defend where no potential coverage even though defense to coverage not asserted at time tender of defense declined].)

V

The Castrejons contend the trial court erred in admitting evidence of Labio's and Saadatirad's criminal convictions. They contend that because the convictions occurred after USLIC declined to provide a defense, they were irrelevant and inadmissible. Again, we find no error. Although not dispositive, the convictions were plainly relevant in considering the nature of the acts that gave rise to the Castrejons' claims.

12

## DISPOSITION

The judgment in favor of USLIC is affirmed.  USLIC to recover its costs of appeal.

_____
BENKE, Acting P. J.

WE CONCUR:


_____
O'ROURKE, J.


_____
IRION, J.