HIGHLANDS INSURANCE
CO., Plaintiff–Appellee,

v.

CONTINENTAL CASUALTY CO.,
Defendant–Appellant.

No. 94–55358.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1995.

Decided Aug. 25, 1995.

Terry M. Cosgrove, Rory T. Dunne, and Felicia L.G. Perlman, Peterson and Ross, Chicago, IL, for defendant-appellant.

John H. Horwitz, Schaffer & Lax, Los Angeles, CA, for plaintiff-appellee.

Before: LAY,[*] BRUNETTI, and RYMER, Circuit Judges.

BRUNETTI, Circuit Judge:

In this diversity action based on California law, primary insurer Continental Casualty Co. appeals from a judgment of the district court that it failed to negotiate a claim settlement in good faith and was therefore liable for the amount paid by excess carrier Highlands Insurance Co. Continental also appeals the district court's prioritization of the four insurance policies involved, its ruling that Continental could not present evidence of comparative fault, and its award of pre-judgment interest. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Factual Background and Proceedings Below

On July 19, 1989, on Highway 126 in California, a car driven by Petra Hernandez collided with a pickup truck driven by Hector Diaz. Diaz caused the accident by negligently crossing over a double yellow line. Hernandez died instantly. Clarke Contracting owned the pickup truck, and Diaz was driving it within the scope of his employment for a joint venture between Lew Construction and Clarke.

Four different insurance policies applied to the accident—two insuring the truck (taken out by Clarke) and two insuring Diaz as a permissive driver (taken out by the joint venture). Continental issued the primary policy on the truck and the primary policy on permissive drivers, each for $1 million in coverage. Highlands issued the excess policy on the truck for $4 million in coverage and the excess policy on permissive drivers for $5 million in coverage.

By October 1989, Continental had determined that Diaz had been at fault and that Clarke and the joint venture were liable. In January 1990, counsel for the Hernandez family (hereinafter, "the Hernandez claimants" or "the Hernandez plaintiffs") indicated to Continental that his clients would be willing to settle for $750,000 to $800,000. Between March and July of 1990, the Hernandez claimants twice requested that Continental participate in a binding mini-max arbitration with a guaranteed maximum award of $900,000. Continental rejected both requests. In April of 1990, the Hernandez claimants filed suit in Los Angeles Superior Court. Between August and November of 1990, the parties participated in three Mandatory Settlement Conferences (MSCs). At each of these conferences, the Hernandez plaintiffs indicated that they would be willing to settle for $750,000.

Continental responded to the $750,000 demand with a succession of offers of its own. In February 1990, Continental offered $284,000 and then $310,000. In April, Continental offered $334,000. At the first MSC in August, Continental offered $425,000. At the second MSC in September, Continental offered $550,000. In October, Continental offered $625,000. The Hernandez claimants

[*] The Honorable Donald P. Lay, United States Senior Circuit Judge for the Eighth Circuit, sitting by designation.

rejected each of these offers and stood by their $750,000 demand through the third MSC on November 8, 1990.

Continental finally offered $750,000 on November 16, 1990—one month before trial. The Hernandez plaintiffs rejected this offer. On the first day of trial, Continental offered the $1 million limit of its policy insuring the truck. This offer was also rejected. Since the defendants had already conceded liability, the case went to trial to determine damages only. The jury returned a verdict of $6,217,000. On January 23, 1991, Highlands negotiated a $5.8 million settlement of the judgment with the Hernandez plaintiffs. On February 5, 1991, Highlands paid the Hernandez plaintiffs $4 million. Continental paid the remaining $1.8 million.

On March 12, 1991, Highlands filed suit against Continental, alleging that it negotiated with the Hernandez plaintiffs in bad faith, thereby failing to reach a settlement within Continental's policy limits and exposing Highlands to liability. Continental cross-claimed, alleging that it only owed $1,107,-533.20 of the settlement amount.

In August 1992, the district court granted Highlands' motion for summary judgment on the prioritization of the insurance policies, holding that both of Continental's policies apply before either of Highlands' policies. In November 1993, the district court granted Highlands' motion to exclude all evidence of Highlands' conduct during settlement negotiations to the extent that such evidence related to Continental's defenses of comparative fault and failure to mitigate damages. The district court concluded that since Continental never exhausted its policy limits during the settlement negotiations, Highlands had no duty or right to participate in the negotiations.

A bench trial was held in November of 1993. The district court found that Continental had negotiated with the Hernandez claimants in bad faith and awarded Highlands $4 million in damages, plus pre-judgment interest. Continental thereafter filed a timely notice of appeal.

## II. Bad Faith

Continental first appeals the district court's finding that Continental breached the covenant of good faith and fair dealing when it failed to reach a settlement with the Hernandez claimants. Under California law, whether or not an insurer is guilty of bad faith is ordinarily a question of fact. *Walbrook Ins. v. Liberty Mut. Ins.*, 5 Cal.App.4th 1445, 7 Cal.Rptr.2d 513, 517 (1992). We do not set aside findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a).

An insurer may be held liable for a judgment against the insured in excess of the policy limits when the insurer has breached its implied covenant of good faith and fair dealing by unreasonably refusing to accept a settlement offer within the policy limits. *Commercial Union Assurance Co. v. Safeway Stores, Inc.*, 26 Cal.3d 912, 164 Cal.Rptr. 709, 711, 610 P.2d 1038, 1040 (1980). Similarly, an excess carrier may maintain an action against the primary carrier for unreasonable refusal to settle within the latter's policy limits. *Id.* at 712, 610 P.2d at 1040. An insurer who violates the covenant of good faith is liable for the entire judgment. *Comunale v. Traders & General Insurance Co.*, 50 Cal.2d 654, 328 P.2d 198, 202 (1958).

The test for "unreasonable" or "bad faith" refusal to settle has been variously described in California case law. Based on our understanding of that case law, an insurer negotiates in bad faith when it refuses settlement offers that are both within policy limits and reasonable. An offer of settlement within policy limits is reasonable when there is a substantial likelihood that a jury verdict will be beyond those limits. *See, e.g., Comunale*, 328 P.2d at 201; *Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 16, 426 P.2d 173, 176 (1967); *Murphy v. Allstate Insurance Co.*, 17 Cal.3d 937, 132 Cal.Rptr. 424, 426, 553 P.2d 584, 586 (1976). In this case, the evidence demonstrates that the district court did not clearly err by finding that Continental negotiated with the Hernandez plaintiffs in bad faith.

On four different occasions, the Hernandez claimants were prepared to settle for $1 million or less, which Continental concedes was

within its primary policy limits. The Hernandez claimants also twice requested that Continental participate in binding arbitration that would have guaranteed a settlement of $900,000 or less. Continental rejected every one of these offers of settlement or arbitration.

In addition, Continental received a number of indications during the settlement negotiations that a jury verdict would likely be in excess of $1 million and that the offers made by the Hernandez claimants to settle for less than $1 million were reasonable. For example, by January of 1990, Continental's local office in Brea, California, had determined that the Hernandez claim had a settlement value of $500,000 to $750,000 and that a verdict in excess of $1 million was possible. Also, the attorney retained by Continental to defend the Hernandez suit recommended that Continental settle for $700,000 to $800,000. Finally, the judge who supervised the Mandatory Settlement Conferences determined that the case had a settlement value of $700,000 to $800,000 and a verdict value over $1 million.

■ Furthermore, the fact that the eventual jury verdict was over $6 million is evidence of the reasonableness of the settlement offers. "The size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim." *Crisci*, 58 Cal.Rptr. at 17, 58 Cal.Rptr. 13, 426 P.2d 173.

■ Finally, the fact that Continental offered $750,000 thirty days before trial and $1 million the morning of trial does not preclude the district court's finding of bad faith. "[I]n addition to protecting the insured, the rule imposing liability on an insurer for failure to effect reasonable settlement within its policy limits serves the important public policy of encouraging settlement of legal controversies." *Northwestern Mut. Ins. Co. v. Farmers Ins. Gr.*, 76 Cal.App.3d 1031, 143 Cal. Rptr. 415, 427 (1978). Continental certainly did not serve the public policy favoring set-

tlement by waiting until the eleventh hour to finally make those offers.

Therefore, we conclude that the district court did not clearly err by finding that Continental breached the covenant of good faith and fair dealing.

### III. Prioritization of the Policies

Continental next argues that the district court erroneously prioritized, or "stacked," the four insurance policies on summary judgment. Continental concedes that its $1 million dollar policy insuring the truck applied first to the accident. However, it contends that the district court erred by concluding that its $1 million policy insuring the driver applied second. It argues that the Highlands $4 million excess policy insuring the truck applied second.

Since we have already affirmed the district court's finding that Continental negotiated in bad faith, Continental is liable for the entire judgment in favor of the Hernandez plaintiffs. Thus, we need not resolve this issue for purposes of apportioning liability between the insurers. However, we do need to resolve this issue in order to determine whether the district court properly excluded evidence of Highlands' comparative fault.

### IV. Comparative Fault

Continental appeals the district court's exclusion of all evidence relating to the defenses of comparative fault and mitigation of damages. Continental argues that once it offered the $1 million limit of its truck policy to the Hernandez plaintiffs, it had exhausted its underlying policy limit. It argues that the Highlands truck policy applies next, and that Highlands therefore had a duty to, and did in fact, involve itself in settlement negotiations. Continental sought to show at trial that Highlands' failure to reach a settlement with the Hernandez plaintiffs contributed to its own damages.

The district court concluded that Continental's $1 million driver policy applied second, immediately after Continental's $1 million truck policy. Therefore, Continental's underlying policy limit actually totaled $2 million. Under this prioritization scheme, Con-

tinental never exhausted its policy limits during the negotiations. Accordingly, Highlands never had a duty or right to participate in the negotiations, *see Continental Casualty Co. v. Royal Insurance Co. of America,* 219 Cal.App.3d 111, 268 Cal.Rptr. 193, 197 (1990), and the district court excluded all evidence of Highland's comparative fault.

██ In order to determine whether the district court properly excluded this evidence, then, we must determine whether it correctly prioritized the policies. The prioritization of the policies turns on a question of law, *see Hartford Accident and Indemnity Co. v. Sequoia Ins. Co.,* 211 Cal.App.3d 1285, 260 Cal.Rptr. 190, 202 (1989), which we review *de novo.*

Continental makes two arguments that Highlands' truck policy applies before Continental's driver policy. First, Continental argues that California Insurance Code § 11580.9(d) dictates this ranking. Alternatively, it argues that the terms and conditions of the policies themselves dictate this ranking.

### A. Does § 11580.9(d) control the order of the policies?

California Insurance Code § 11580.9(d) provides, in pertinent part, as follows:

> [W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

Both parties agree that Continental's policy on the truck is primary under the statute because it describes the truck as an owned automobile by reference to the Vehicle Identification Number. Continental goes on to argue that Highlands' policy on the truck also describes it as an owned vehicle by incorporating the description from the Continental truck policy. It does this, Continental contends, by listing the Continental policy on

the Extension Schedule of Underlying Insurance Policies.

*Hartford,* 260 Cal.Rptr. 190, also involved a fatal car accident in which there were primary and excess policies on the vehicle and primary and excess policies on the permissive driver. As in the present case, the primary insurer of the driver contended that the vehicle owner's excess policy incorporated the description of the vehicle when it listed the owner's primary policy in the extension schedule. *Id.* at 195. The court in *Hartford* held that listing the primary policy in the extension schedule does not sufficiently particularize the vehicle to transform the excess policy into a primary policy for purposes of § 11580.9(d). *Id.* at 196–97. The court went on to hold that the permissive driver's primary policy applied before the vehicle owner's excess policy. *Id.* at 199.

In the present case, the extension schedule of the Highlands truck policy lists the Continental truck policy and identifies the type of coverage as "Business Automobile Liability including: Hired Automobiles, Owned Automobiles, Non–Owned Automobiles." Continental argues that the identification of "owned automobiles" as a class that is covered by the underlying policy makes this case different from *Hartford* and sufficiently particularizes the truck for purposes of § 11580.9(d).

██ However, a policy which merely describes a vehicle as "owned" and does not particularize the vehicle in any other way is not a primary policy as defined by § 11580.9(d). *Ohio Cas. Ins. Co. v. Aetna Ins. Co.,* 85 Cal.App.3d 521, 149 Cal.Rptr. 562, 563–64 (1978). Therefore, § 11580.9(d) does not control the ranking of the policies in the present case except to render the Continental policy on the truck primary and first in priority.

### B. What do the terms and conditions of the policies themselves dictate?

Continental next argues that even if § 11580.9(d) does not control the ordering of the Continental driver policy and the Highlands truck policy, the terms and conditions of those policies do. Specifically, Continental maintains that the "other insurance" clause

in the Continental driver policy makes that policy excess to the Highlands truck policy.

The Continental driver policy, which was issued to the joint venture, provides, "For any covered 'auto' you own, this coverage form provides primary insurance. For any covered 'auto' you don't own, the insurance provided by this coverage form is excess over any other collectible insurance." Since Clarke, not the joint venture, owned the truck, this clause renders the Continental driver policy excess to any policy on the truck, including the Highlands truck policy.

However, the Highlands truck policy, which was issued to Clarke, provides, "The insurance afforded by this policy shall apply in excess of all other insurance available to the insured, whether or not described in the Schedule of Underlying Insurance, and applicable to any part of ultimate net loss." The Continental driver policy is both "available to" Clarke as a member of the joint venture and "applicable to" the net loss from the accident in this case. Thus, this clause renders the Highlands truck policy excess to the Continental driver policy. Therefore, the "other insurance" clauses of these policies are in direct conflict.

 Conflicting "other insurance" clauses "cancel each other out." *Hartford,* 260 Cal.Rptr. at 199. Once conflicting clauses cancel out, prioritization of the policies is governed by "the well-established rule[ ]" that excess-type policies do not attach until all primary-type policies have been exhausted. *Id.* at 198–99 (citing *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.,* 126 Cal. App.3d 593, 178 Cal.Rptr. 908 (1981) and *McConnell v. Underwriters at Lloyds,* 56 Cal.2d 637, 16 Cal.Rptr. 362, 365 P.2d 418 (1961)). *See also 20th Century Ins. Co. v. Liberty Mut. Ins. Co.,* 965 F.2d 747, 756 (9th Cir.1992) (California courts apply "judicially-crafted presumptions of priority only when terms of applicable policies are in conflict."). The court determines whether each policy is categorized as "primary" or "excess" by looking to the rest of the policy, without regard to conflicting terms. *Hartford,* 260 Cal.Rptr. at 198–99. In *Hartford,* because the remaining terms of one policy made clear that it was "primary," while the remaining terms of

two additional policies made clear that they were "excess," the court placed the "primary" policy before the two "excess" policies. *Id.* at 199.

 In this case, every aspect of the Highlands truck policy indicates that it is an excess-type policy. In the section describing the nature of the coverage, the policy provides that Highlands "hereby agrees to pay on behalf of the insured such ultimate net loss *in excess of the underlying limit* ... which the insured shall become obligated to pay...." (emphasis added). *See Olympic,* 178 Cal.Rptr. at 910 (" 'Excess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted."). The Highlands truck policy also contains an "Extension Schedule" that lists underlying policies. In the list of "Conditions," the policy requires maintenance of the underlying policies. Indeed, the very title of the Highlands truck policy—"Umbrella Liability Policy"— indicates that it is an excess-type policy. *See id.* at 910–11 ("Secondary insurance is sometimes referred to as 'umbrella' insurance.").

Except for its (cancelled out) "other insurance" clause, the Continental driver policy has no characteristics of an excess policy. It is not entitled "Umbrella" or "Excess" or "Secondary." The description of its liability coverage does not refer to an underlying policy. It contains no extension schedule listing an underlying policy. Its terms make clear that it is a primary-type policy. *See id.* at 910 ("Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability.").

In sum, because the "other insurance" clauses of the Continental driver policy and the Highlands truck policy cancel each other out, we rely upon the remaining terms of those policies to prioritize them. Those terms make clear that the Continental policy is primary and the Highlands policy is excess. Thus, the district court did not err by ranking the Continental policy before the

Highlands policy.[1] Since Continental never exhausted its $2 million primary policy limits during the settlement negotiations, evidence of Highlands' involvement in the negotiations was properly excluded.

## V. Pre–Judgment Interest

California Civil Code § 3287(a) provides, in pertinent part, as follows:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day.

After the district court found in favor of Highlands, it awarded pre-judgment interest from February 5, 1991—the date that Highlands paid out the $4 million limit of its truck policy to satisfy the post-judgment settlement negotiated with the Hernandez plaintiffs. Continental now appeals that award of interest. "An award of pre-judgment interest is reviewable for abuse of discretion." *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 714 (9th Cir.1992).

### A. Is an award of pre-judgment interest appropriate in this case?

Section 3287(a) "does not authorize pre-judgment interest as a matter of law where the amount of damages depends upon a judicial determination based upon conflicting evidence." *Polster, Inc. v. Swing,* 164 Cal. App.3d 427, 210 Cal.Rptr. 567, 572 (1985). Continental argues that an award of pre-judgment interest was inappropriate in this case because the extent of Highlands' comparative fault and failure to mitigate had to be judicially determined before the amount of damages were made certain.

Continental's claim must fail. The *extent* of Highlands' comparative fault was never an issue to be judicially determined based upon conflicting evidence. The issue before the district court regarding damages was whether a comparative fault defense would even be available to Continental. This was a pure question of law that depended upon resolution of the prioritization of the policies. While a factual dispute respecting damages will preclude a grant of prejudgment interest under § 3287(a), a legal dispute will not. *See Hartford,* 260 Cal.Rptr. at 202 (unresolved issue respecting prioritization of policies does not preclude grant of pre-judgment interest); *Fireman's Fund Ins. v. Allstate Ins.,* 234 Cal.App.3d 1154, 286 Cal.Rptr. 146, 159 (1991) (extent of exposure was a pure question of law that did not preclude pre-judgment interest). Therefore, the district court in this case was not precluded from awarding pre-judgment interest at its discretion.

### B. From when should interest start accruing?

Continental next argues that even if pre-judgment interest was appropriate, the district court erred by choosing February 5, 1991, as the date on which the interest began accruing. "[P]rejudgment interest runs from the date when the damages are of a nature to be certain or capable of being made certain by calculation and when the exact sum due to the plaintiff is made known to the defendant." *Levy–Zentner Co. v. Southern Pac. Transp. Co.,* 74 Cal.App.3d 762, 142 Cal.Rptr. 1, 25 (1977). Continental maintains that even though Highlands paid the Hernandez plaintiffs $4 million on February 5, it did not know

1. We note that our conclusion is not in conflict with *20th Century,* 965 F.2d 747. In that case, the terms of the so-called "primary" and "excess" policies did not actually cancel each other out. *Id.* at 757. The "primary" policy made clear that it was excess to certain other policies, including the "excess" policy. *Id.* The "excess" policy, on the other hand, made clear that it was excess only to specifically enumerated underlying policies. *Id.* The particular "primary" policy at issue was not among the specifically enumerated policies, and the "excess" policy contained no other clause that effectively made itself excess to that "primary" policy. Therefore, the court ranked the so-called "excess" policy before the so-called "primary" policy. *Id. See also, Fireman's Fund Indemnity Corp. v. Prudential Assurance Co.,* 192 Cal.App.2d 492, 13 Cal.Rptr. 629 (1961).

Our case is different. Each policy does contain an "other insurance" clause that effectively makes each policy excess to the other. Therefore, these clauses cancel each other out, *Hartford,* 260 Cal.Rptr. at 199. In order to properly prioritize them, we must determine which policy is otherwise generally excess and which is otherwise generally primary.

the extent of Highlands' damages until Highlands filed its complaint on March 12, 1991. Therefore, according to Continental, if the award of pre-judgment interest is affirmed, it should run from March 12, 1991.

The settlement was negotiated on January 23. On February 7, Continental's defense counsel sent a letter to Continental that begins, "As you all know, this case has now been settled. Attached you will find all closing papers." We cannot conclude that the district court abused its discretion by finding that Continental knew the terms of the settlement and the extent of Highlands' damages as of February 5. Therefore, we affirm the award of pre-judgment interest.

**AFFIRMED.**